**McDONALD'S CORPORATION,**
**Plaintiff,**

v.

**BURGER KING CORPORATION,**
**Defendant.**

**No. 99–CV–73301.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 22, 1999.

Patrick G. Seyferth, James P. Feeney, Feeney, Kellett, Bloomfield Hills, MI, Robert E. Browne, Mark G. Galis, Michael G. Kelber, Chicago, IL, Todd Tucker, Oak Park, IL, Pamela A. Kilby, Chicago IL, for Plaintiff.

Dennis J. Lavasseur, J. Adam Behrendt, Bodman, Longley, Detroit, MI, Arlana S. Cohen, St. Onge, Steward, Stamford, CT, Jay H. Begler, Nancy J. Deckinger, New York City, W. Barry Blum, Marlene M. Gordon, Miami, FL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

O'MEARA, District Judge.

This matter came before the court on plaintiff McDonald's Corporation's July 8, 1999 motion for preliminary injunction. Defendant Burger King Corporation filed a response September 1, 1999; and McDonald's filed a memorandum September 3 and a reply September 7. Oral argument was heard September 7, 8 and 24, 1999. McDonald's filed amended, proposed findings of fact and conclusions of law October 7; Burger King filed corrected, proposed findings of fact and conclusions of law October 8.

### FINDINGS OF FACT

1. Plaintiff McDonald's and defendant Burger King are direct competitors in the fast food restaurant business.

2.  McDonald's and Burger King, as well as other fast food restaurant chains such as Wendy's, Taco Bell, and KFC, have long used the descriptive term "kids meal" to describe a combination meal package for children, primarily aged 4–7 years old.

3.  Plaintiff McDonald's used the term "Big Kid's Meal" in a promotion from May 29 through June 14, 1998, in the metropolitan Detroit, Michigan market.

4.  McDonald's "Big Kid's Meal" was a combination meal package aimed at adults. It contained two large cheeseburgers, a large order of French fries, a soft drink, and discount coupons for Cedar Point Amusement Park.

5.  McDonald's developed and used one 30–second television commercial, one 30–second radio commercial, and one 60–second radio commercial to promote sales for its "Big Kid's Meal."

6.  McDonald's filed an application to register "Big Kid's Meal" with the U.S. Patent and Trademark Office on July 8, 1998.

7.  On March 25, 1999, the trademark examiner issued a letter refusing registration of "Big Kid's Meal" on the grounds of descriptiveness.

8.  McDonald's filed a response to the registration rejection September 2, 1999.

9.  Beginning in 1995, Burger King conducted consumer research which showed that older children, ages 7–12, wanted the premium that accompanied kids meals but needed larger portions of food.

10. Between 1995 and 1997 Burger King researched the market to determine appropriate food portions and pricing and to see whether a larger portion of a kid's meal would dilute sales of the small combinations.

11. In November 1997, Burger King's legal department ordered a trademark search of the term "Big Kids Meal." Finding no registered trademark,

Burger King developed and created commercials and point-of-purchase materials for its big kids meal.

12. Burger King market tested its big kids meal for six weeks in Albany, New York; San Diego, California; and Greensboro, North Carolina.

13. In September 1998, Burger King's in-house trademark counsel discovered McDonald's July 1998 application to register "Big Kid's Meal."

14. In March 1999, Burger King was advised that McDonald's application for trademark was rejected.

15. Burger King introduced its "BK Kids Meal" nationally in June 1999 in all of its approximately 8,000 restaurants in the United States and Canada.

16. McDonald's filed this action June 30, 1999.

17. Insofar as the Conclusions of Law below are dependant upon facts, the court finds facts consistent with those conclusions.

## CONCLUSIONS OF LAW

1.  The court must consider the following four factors in determining whether to grant a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure: 1) the movant's likelihood of success on the merits, 2) irreparable harm to the movant if the injunction does not issue, 3) the effect of an injunction on third parties, and 4) whether the public interest would be served by issuance of an injunction. *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985).

2.  McDonald's cannot demonstrate likelihood of success on the merits.

A.  The Trademark Office initially concluded that the mark "Big Kid's Meal" is merely descriptive. Thus, at this point "Big Kid's Meal" is not a registered trademark.

B. McDonald's has not established common law trademark rights in the term "Big Kid's Meal," as it was merely repeated on signs of various sizes, and it was used for only 17 days in a limited geographic area, the Detroit metropolitan area.

C. McDonald's has failed to provide evidence to show that its use of "Big Kid's Meal" has acquired secondary meaning. The burden is on McDonald's to "show that the primary significance of the term in the minds of the consuming public is not the product but the producer." *King–Size, Inc. v. Frank's King Size Clothes, Inc.,* 547 F.Supp. 1138, 1156 (S.D.Texas 1982)(quoting *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938)).

D. McDonald's has failed to provide evidence to show likelihood of confusion by the consuming public. Burger King has always used "Burger King Big Kids Meal" or "BK Big Kids Meal" when referring to its product. Because McDonald's and Burger King each have highly identifiable marks, it is difficult to imagine that any consumer visiting a restaurant of either party would believe that he or she is at the other party's restaurant.

E. Burger King's use of "Big Kids Meal" constitutes fair use which, for purposes of this motion, presents a bar to McDonald's success on the merits. The fair use doctrine provides that although trademark rights may be acquired in a word or image with descriptive qualities, the acquisition of such rights will not prevent others from using words in good faith in a descriptive sense and not as a trademark. *Car–Freshner Corp. v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 269 (2d Cir.1995). The doctrine is codified in Section 33(b)(4) of the Lanham Act, 15 U.S.C. § 1115(b)(4).

3. Because an injunction is an "extraordinary remedy," a court will not invoke its injunctive powers unless the movant has met its burden of proof regarding irreparable harm.

*Meyer Jewelry Co. v. Meyer Holdings, Inc.,* 906 F.Supp. 428, 432 (E.D.Mich.1995). Any claimed irreparable harm must be "imminent," *Gougeon Bros., Inc. v. Hendricks,* 708 F.Supp. 811, 817 (E.D.Mich.1988), with a "substantial threat of impending injury." *Chem–Trend, Inc. v. McCarthy,* 780 F.Supp. 458, 460 (E.D.Mich.1991).

4. In this case McDonald's has failed to demonstrate irreparable harm.

A. McDonald's has asserted that Burger King's use of the term "Big Kid's Meal" will "destroy McDonald's future plans and its ability to use the mark again [and] destroy McDonald's ability to expand the use ... mark to other regions ...." Strong dep. at 10. McDonald's assertion is merely speculative, however.

B. McDonald's delay in asserting its alleged rights belies a claim of irreparable harm.

i. Burger King began using its campaign in its test markets in Albany, San Diego and Greensboro over a year ago.

ii. McDonald's trademark application was rejected in March 1999. Although applicants are given six months in which to file a response, McDonald's waited until the end of that window, September 2, 1999, (and one week before the preliminary injunction hearing in this case) to file its response. At no time did McDonald's seek accelerated review by the Trademark Office.

5. Third parties would not be harmed if the injunction does not issue.

6. The public interest would not be served by issuance of the injunction.

7. In balancing the hardships on the parties if an injunction were to issue, the court finds that the harm to Burger King would be great, as it has expended considerable time and mon-

ey to an ongoing advertising campaign. McDonald's, on the other hand, has expended less time and money on its campaign, which, at this time, it has no definite plans to repeat.

### ORDER

It is hereby **ORDERED** that McDonald's July 8, 1999 motion for preliminary injunction is **DENIED.**